[Cite as *State v. Marquand*, 2014-Ohio-698.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No.   99869

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JAMES MARQUAND

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-569904

**BEFORE:**   Boyle, A.J., S. Gallagher, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:**   February 27, 2014

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
BY:   Cullen Sweeney
Assistant Public Defender
310 Lakeside Avenue
Cleveland, Ohio   44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Brett Kyker
Assistant County Prosecutor
8th Floor, Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, A.J.:

{¶1} Defendant-appellant, James Marquand, appeals his convictions for attempted statutory rape, attempted unlawful sexual conduct with a minor, and possession of criminal tools.   He raises three assignments of error for our review:

1.    Appellant's conviction for attempted rape is against the manifest weight of the evidence.

2.    The trial court erred and violated appellant's state and federal due process rights when it refused to give a lesser included offense instruction.

3.    The trial court erred in admitting evidence of unfairly prejudicial and irrelevant character evidence against the defendant in violation of state and federal due process rights and Evid.R. 403 and 404.

{¶2} Finding no merit to his arguments, we affirm.

Procedural History and Factual Background

{¶3} In December 2012, Marquand was indicted on five counts: one count of attempted rape in violation of R.C. 2923.02 and 2907.02(A)(1)(b) (with a girl less than 13 years old); one count of attempted unlawful sexual conduct with a minor in violation of R.C. 2923.02 and 2907.04(A) (with a girl between the ages of 13 and 16 years old), with a furthermore clause that he was ten or more years older than the victim; one count of possessing criminal tools in violation of R.C. 2923.24(A); and two counts of attempted kidnapping in violation of R.C. 2923.02 and 2905.01(A)(4).   All counts had forfeiture specifications attached to them.   The following facts were presented to the jury.

{¶4} Rick McGinnis, investigator with the Cuyahoga County Prosecutor's Office and the Ohio Internet Crimes Against Children Task Force, testified that he monitors

Craigslist ads in Michigan, Ohio, and Pennsylvania. He searches for personal ads that state that a person is looking for sexual encounters with young people. On the morning of December 12, 2012, he found an ad from Flint, Michigan, posted that day at 2:47 a.m., that was titled "Younger Girls Please For Fun --- m4w --- 28." The ad read:

> Looking for younger girls that have no experience or not much experience and need practice sucking my cock and want to learn what it's all about ;) if this is you please respond! I would love to help you out! I will do whatever you want to make you feel really good! I'm very discreet and you don't have to worry about a thing cause its just for fun :) send me a pic so I know your [sic] real with how old you are, the younger the better ;) text me sixthreeone fouroneseven sevenonethree if you don't want to email.

{¶5} Investigator McGinnis said that he was drawn to the ad because it did not reference a specific age or age range and because the title contained the word "young" in it. He also explained that the ad contained references to "young" throughout it, as well as "no experience or not much experience."

{¶6} Investigator McGinnis testified that he assumed an undercover persona of "Cliff Barton," the father of 12- and 14-year-old daughters. Using an undercover email address of "dadanddaul12@gmail.com," he responded to the ad with "what age are you looking for?" He received a reply from "James," who was using an email address of "Gamerzzone2011@gmail.com." James responded, "how's it going. Let's just start off by telling me how old you are :)[.]" Investigator McGinnis asked James again what age he was interested in. James responded, "it all depends on the girl. I guess I just need to know the age and a pic, if possible. I'm open to whatever but I just would like to know."

Investigator McGinnis replied: "have different ages what [are] your limits?" James responded that he "guessed" he had "no limits."

{¶7} Investigator McGinnis went on to explain to James that he was the father of two girls ages 12 and 14. James asked to see photos of the girls. Investigator McGinnis sent James two photos of female law enforcement officials that had been digitally altered to make them look younger. Investigator McGinnis told James that "Katie" was the 12-year-old and "Tatiana" was the 14-year-old. James asked for nude photos of the girls, but Investigator McGinnis responded that he would not send nude photos of them.

{¶8} Investigator McGinnis and James continued to email back and forth. James asked McGinnis, "so you're setting this up for me to play with both of them?" McGinnis responded, "whatever you are interested in. I just need to know." James asked McGinnis if the girls "had ever [done] this before?" James further told McGinnis that he would want to give them both "oral pleasure," and have them "try oral" on him. James said that he "would like to try and slowly have sex with the 14-year-old," but said that he would "take it slow" because he was "not out to put them in pain." James further stated that he would "maybe work at the 12-year-old and see if it could happen." James asked McGinnis if the girls wanted "dick pics," and McGinnis replied, "if you want to, sure." James subsequently sent photos of his penis so that the "girls" could see what it looked like.

{¶9} Eventually, Investigator McGinnis and James began talking on "Google chat." They discussed where to meet. Investigator McGinnis told James that he was in

Cleveland. James responded that he lived in Flint, Michigan, but said that he was fine with the encounter occurring in Cleveland. McGinnis told James that he booked a hotel room for Friday, December 14, 2012, at the Holiday Inn Express in Brook Park, Ohio. James asked if the girls would "already be naked" when he got there. McGinnis replied, "whatever you want." James then asked, "well do they have anything sexy to wear?" McGinnis responded, "bring them something lol." James asked what size the girls wore and what their favorite color was. James also asked if the 14-year-old had "some breast size yet," and if she "shaved." James then asked if the 12-year-old had breasts yet. James later sent photos to McGinnis of two small thongs that he had bought for the "girls" to wear.

{¶10} On the morning of December 14, 2012, Investigator McGinnis and James continued to maintain contact. As James was driving to Ohio from Michigan, James informed McGinnis of his location along the way. As James got close to the hotel in Brook Park, Investigator McGinnis testified that officers set up surveillance outside and inside the hotel room where James was supposed to meet the two "girls." James arrived at the hotel around 2:00 p.m. When James knocked on the hotel room door, he was arrested.

{¶11} Investigator McGinnis and Detective Jamie Bonnette of the Cuyahoga County Sheriff's Office interviewed James (later identified to be Marquand) in the back of a mobile forensic vehicle. At the time of the interview, Marquand was unaware that he had been corresponding with an undercover law enforcement official. The interview

was audio and video recorded. Marquand admitted to corresponding with "Cliff Barton." When asked what his understanding was as to what was going to happen at the hotel, Marquand said that he and the "girls" would perform oral sex on each other, but that the "bottom line" was sex. Marquand further told the officers that he was going to try to have sex with the 14-year-old, but that he was unsure about the 12-year-old.

{¶12} Police recovered several items from Marquand when he arrived at the hotel, including the two thongs, an iPhone, and a Hewlett Packard laptop. Jeffrey Rice, an investigator for the Cuyahoga County Prosecutor's Office and the Ohio Internet Crimes Against Children Task Force, testified that he examined Marquand's computer and iPhone. He discovered that Marquand had set up a profile on a "teen dating" website, with the username "GBdirtyboy." Investigator Rice found that in December 2012, Marquand had accessed the profile pages of several teenage females on "mylol.net," ranging in age from 13 to 16 years old. Marquand had 31 "friends" on the site, all females ranging in age from 13 to 16 years old. Investigator Rice also found five images of suspected child pornography on Marquand's iPhone. Marquand had also searched Google for "dating sites for preteens," "dating sites for 13 – 16 year olds," and "dating sites for 16 year olds."

{¶13} Investigator Rice did not find the Craigslist ad on Marquand's computer that Investigator McGinnis had responded to, but he found two other similar Craigslist ads: "Daddy seeks Younger Girl to Spoil" and "Fulfill my Fantasy of a Younger Girl." Investigator Rice also found "titles" of suspected child pornography movies in

Marquand's "drive free space," but he did not find the actual movies on Marquand's computer.

{¶14} The jury found Marquand guilty of attempted rape with a girl less than 13 years old, attempted unlawful sexual conduct with a minor of a girl between the ages of 13 and 16 years old, and possessing criminal tools. It found him not guilty of the two counts of attempted kidnapping.

{¶15} The trial court sentenced Marquand to a total of five years in prison: five years for attempted rape, 18 months for attempted unlawful sexual conduct, and 12 months for possessing criminal tools, all to be served concurrent to one another. The trial court notified Marquand that he would be subject to a mandatory five years of postrelease control upon his release from prison, and further notified Marquand that he would be classified a Tier III sex offender for the attempted rape and a Tier II sex offender for the attempted unlawful sexual conduct. It is from this judgment that Marquand appeals.

Manifest Weight of the Evidence

{¶16} In his first assignment of error, Marquand argues that his conviction for attempted rape of the 12-year-old is against the manifest weight of the evidence. He maintains that while the state may have presented sufficient evidence of attempted rape, the jury lost its way regarding the affirmative defense of entrapment. Specifically, he contends that the evidence established that Investigator McGinnis "planted the idea of statutory rape (sex with a 12-year-old) in Marquand's mind." He argues that there was

no evidence that he was "predisposed to having sexual conduct with a girl who, because of her age, could not legally consent."

{¶17} When an appellate court analyzes a conviction under the manifest weight standard, it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Under a manifest weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the factfinder's resolution of the conflicting testimony. *Id*. Although the appellate court may act as a thirteenth juror, it should give due deference to the findings made by the factfinder. *Id*. at 388. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. *Id*.

{¶18} The affirmative defense of entrapment "is established where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute." *State v. Doran*, 5 Ohio St.3d 187, 449 N.E.2d 1295 (1983), paragraph one of the syllabus.

{¶19} In defining "entrapment," the Ohio Supreme Court adopted a subjective test, which focuses on the predisposition of the accused to commit the offense, emphasizing

the accused's criminal culpability and not the culpability of the police officer. *Id.* at 192.

Entrapment does not occur when "it is shown that the accused was predisposed to commit the offense," and the government "merely afford[s] opportunities or facilities for the commission of the offense." *Id.* The Supreme Court set forth the following factors, although non-exhaustive, as relevant in establishing the issue of predisposition:

> (1) The accused's previous involvement in criminal activity of the nature charged, (2) the accused's ready acquiescence to the inducements offered by the police, (3) the accused's expert knowledge in the area of the criminal activity charged, (4) the accused's ready access to contraband, and (5) the accused's willingness to [become involved] in criminal activity.

*Id.*

**{¶20}** Because the defense of entrapment is an affirmative defense, the burden of production and the burden of proof, by a preponderance of the evidence, is on the defendant. *Id.*; R.C. 2901.05(A).

**{¶21}** Marquand argues that the jury lost its way when it found that he was not entrapped because he was not the first one to bring up the issue of age, nor was he the first one to suggest the idea of having sex with the 12-year-old. He further argues that his Craigslist ad was "open ended," and did not indicate that he wanted to have sex with someone under the age of 13. He claims that it was McGinnis who dictated the meeting place and time and "induced Marquand to travel from Michigan to Ohio." Marquand maintains that he has no prior record, and told police that in the past he had only dated "younger" girls between the ages of 18 and 23. Finally, Marquand argues that even the

"other-acts evidence" established that he was predisposed to have sexual contact only with females over the age of 13.

**{¶22}** Marquand was convicted of attempted statutory rape under R.C. 2907.02(A)(1)(b). This provision states that no one shall engage in "sexual conduct" with another when "[t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." Under R.C. 2907.01(A), "sexual conduct" includes oral and vaginal sex.

**{¶23}** After review, we disagree with Marquand that the jury lost its way in finding that he did not meet his burden of proving that he was entrapped. In his Craigslist ad, Marquand stated "the younger the better." When Investigator McGinnis asked him what his age limits were, Marquand replied that he had "no limits" and asked "how many are there and what[']s the ages?" When McGinnis told him "12 and 14," Marquand responded, "[m]ay I see pics please?" After McGinnis sent him two photos of what he thought were 12- and 14-year-old girls, Marquand requested nude photos of them, saying, "they are very cute by the way!" Marquand then asked Investigator McGinnis, "[s]o [you're] setting this up for me to play with both of them?" McGinnis responded, "whatever you're interested in just need to know[.]" It was Marquand who then asked, "so would you like to host or should I?" Investigator McGinnis said that he would "host at a hotel." Marquand showed absolutely no hesitation when McGinnis told him that one of his "daughters" was 12 years old.

{¶24} Further, it was not McGinnis who planted the idea of having sex with the 12-year-old. When Marquand asked McGinnis if he would be "playing" with them as well (meaning all four of them), McGinnis replied "no," but then told Marquand that he wanted to know what Marquand planned to do with the "girls." Marquand responded that he

> would want to give them both oral pleasure and I would want them to try oral on me as well * * * also I would like to try and slowly have sex with the 14 year old I want to take it slow I'm not out to put them in pain just nothing but good pleasure they both will enjoy.

Later, after they had set up a meeting place and time, McGinnis asked Marquand, "what you say you wanted to do yesterday [sic]?" Marquand responded again that he "would like to try and slowly have sex with the 14- year-old," but said he would "take it slow" because he was "not out to put them in pain." Marquand also said that he would "maybe work at the 12-year-old and see if it could happen." When Marquand showed up at the hotel, he brought two small thongs that he had purchased for the "girls."

{¶25} Additionally, Marquand's argument that even the "other-acts evidence" established that he was predisposed to have sexual contact with females over the age of 13 is unfounded. Although he only had "friend" profiles of girls from 13 to 16 years old in his "mylol.net" account, he had searched Google for "dating sites for preteens." "Preteen" includes 12-year- olds.

{¶26} After reviewing the evidence in this case and sitting as the "thirteenth juror," we conclude that the jury did not lose its way in finding that Marquand was not entrapped. Marquand was very willing to participate, even after he learned that one of

the girls was only 12 years old. Although he had no previous criminal activity, he was more than willing to drive to Ohio to meet a 12- and a 14-year-old girl in a hotel, and have sex with them.

{¶27} Accordingly, after reviewing the entire record, weighing all of the evidence and all of the reasonable inferences, considering the credibility of the witnesses, and in resolving conflicts in the evidence, we conclude that the jury did not clearly lose its way and create such a manifest miscarriage of justice such that the conviction must be reversed and a new trial ordered.

{¶28} Marquand's first assignment of error is overruled.

Lesser Included Offense

{¶29} In his second assignment of error, Marquand argues that the trial court erred when it refused to instruct the jury on the lesser included offense of attempted importuning on the attempted rape count, as well as on the attempted unlawful sexual conduct with a minor count.

{¶30} A trial court's decision to grant or deny a requested jury instruction is reviewed under an abuse of discretion standard. *State v. Williams*, 8th Dist. Cuyahoga No. 90845, 2009-Ohio-2026, ¶ 50. "Abuse of discretion" has been described as a ruling that lacks a "sound reasoning process." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶31} The question of whether a particular offense should be submitted to the finder of fact as a lesser included offense involves a two-tiered analysis. *State v.*

*Deandra*, 136 Ohio St.3d 18, 2013-Ohio-1722, 989 N.E.2d 986, ¶ 6, citing *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, ¶ 13.   The first tier, also called the "statutory-elements step," is a purely legal question, wherein we determine whether one offense is generally a lesser included offense of the charged offense.   *Id.*, citing *State v. Kidder*, 32 Ohio St.3d 279, 281, 513 N.E.2d 311 (1987).

{¶32} In determining whether an offense is a lesser included offense of another (the "statutory elements step"), a court shall consider whether (1) "one offense carries a greater penalty than the other," (2) "some element of the greater offense is not required to prove commission of the lesser offense," and (3) "the greater offense as statutorily defined cannot be committed without the lesser offense as statutorily defined also being committed."   *Evans,* at paragraph two of the syllabus, clarifying *State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988) (this is the *"Deem* test" as clarified by *Evans*, or the "*Evans* test").

{¶33} After it has been determined that the offense is a lesser included offense, the second tier of determining whether the lesser included offense should be submitted to the jury mandates that courts look to the evidence in a particular case and determine whether "'a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense.'" *Deandra* at ¶ 6, quoting *Evans* at ¶ 13.   *See also State v. Thomas*, 40 Ohio St.3d 213, 216, 533 N.E.2d 286 (1988).

    1. *Attempted Rape and Attempted Importuning*

{¶34} In the first part of our analysis, we must determine if the offense of attempted importuning is a lesser included offense of attempted rape.

{¶35} Rape under R.C. 2907.02(A)(1)(b) provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person."

{¶36} "Sexual conduct" includes

> vaginal intercourse between a male and a female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

R.C. 2907.01(A).

{¶37} The attempt statute, R.C. 2923.02, states that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

{¶38} Importuning under R.C. 2907.07(A) provides that "[n]o person shall solicit a person who is less than thirteen years of age to engage in sexual activity with the offender, whether or not the offender knows the age of such person."

{¶39} "Sexual activity" means "sexual conduct" or "sexual contact," which is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the

purpose of sexually arousing or gratifying either person, or both."   R.C. 2907.01(B) and

(C).

{¶40} In *State v. Jain*, 3d Dist. Auglaize No. 2-09-25, 2010-Ohio-1712, ¶ 10, the

court explained the meaning of "solicit" within the importuning statute:

> [S]olicit does not simply mean to ask.  It "means to seek, to ask, to
> influence, to invite, to tempt, to lead on, to bring pressure to bear."   *State v.
> Skatzes*, 104 Ohio St.3d 195, 819 N.E.2d 215, 2004-Ohio-6391, ¶ 68, citing
> 4 Ohio Jury Instructions (2001) 573, Section 523.03(6) (this same language
> was incorporated into the 2009 revision of the Ohio Jury Instructions, see
> CR 523.03(6)).  A person can attempt to influence another to engage in
> sexual activity, attempt to tempt another to engage in sexual activity,
> attempt to lead on another, and attempt to bring pressure to bear on another.
>  Whether the person is successful in his attempts is another question, but
> one can most certainly try rather than merely think about it.

{¶41} Under the first step of the *Evans* test, we must determine if one offense

carries a greater penalty.  Attempted rape is a second-degree felony.  R.C. 2907.02(B)

and 2923.02(E).  Attempted importuning is a fourth-degree felony.  R.C. 2907.02(C)

and 2923.02(E)(1).   Thus, the first part of the *Evans* test is met.

{¶42} The second step requires this court to determine if there is "some element"

of the greater offense that is not required to prove the lesser offense.   This step is easily

met as well.   There is "some element" (namely "sexual conduct") that is required to

prove attempted rape that is not required to prove attempted importuning.

{¶43} We turn now to the third part of the *Evans* test, i.e., determining whether

"the greater offense as statutorily defined cannot be committed without the lesser offense

as statutorily defined also being committed."   In discussing this part of the analysis, the

Ohio Supreme Court explained after *Evans* that the specific facts of a particular case are

"still irrelevant," but courts should "no longer * * * look at the elements in a vacuum." *Deandra*, 136 Ohio St.3d 18, 2013-Ohio-1722, 989 N.E.2d 986*, ¶ 18. The Supreme Court made clear that "a menu of unrelated, fact-specific hypotheticals" or "implausibles" should not be considered in the analysis. *Id.*; *Evans*, 122 Ohio St.3d 381 at 24, 2009-Ohio-2974, 911 N.E.2d 889. "Rather, it is more instructive to consider the charged crime's relationship with potential lesser included offenses, and then follow the language of the applicable statutes in order to ensure the defendant's constitutional right to notice." *Deandra* at ¶ 18. In clarifying the *Deem* test, the Ohio Supreme Court explained in *Evans* that test now "requires a comparison of the elements of the respective offenses in the abstract to determine whether one element is the functional equivalent of the other. If so, and if the other parts of the test are met, one offense is a lesser included offense of the other." *Evans* at 25.

{¶44} Here, the greater offense of attempted rape can be committed without the lesser offense of attempted importuning also being committed. It is certainly not an "implausible situation" that attempting to engage in sexual conduct with a person under the age of 13 can occur without attempting to "solicit" a person under 13 to engage in sexual conduct (or sexual activity). Despite Marquand's arguments to the contrary, offenders can attempt to engage in sexual conduct with persons under 13 without "soliciting" them to do so (for example, by force). We simply do not agree with Marquand's argument that one "seeking" to have sex with another includes all forms of sexual conduct (even forceful sexual conduct) because if someone wants sex, that person

is necessarily "seeking" sex. But "seeking" to have sex with someone by force (as Marquand argues) is not the equivalent of "soliciting" someone to have sex within the meaning of the importuning statute. *See Jain*, 3d Dist. Auglaize No. 2-09-25, 2010-Ohio-1712, at ¶ 10 (set forth *supra*).

**{¶45}** Thus, we conclude that an element-to-element comparison of attempted rape and attempted importuning reveals that they are simply not the "functional equivalent" of each other. Thus, we agree with the trial court that the attempted importuning under R.C. 2907.07(A) is not a lesser included offense of attempted rape under R.C. 2907.02(A)(1)(b).

2. *Attempted Unlawful Sexual Conduct with a Minor and Attempted Importuning*

**{¶46}** Unlawful sexual conduct with a minor under R.C. 2907.04(A) provides that "[n]o person who is eighteen years of age or older shall engage in sexual conduct with another * * * when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard." If the offender is ten or more years older than the other person, which Marquand was, the offense is a felony of the third degree. R.C. 2907.04(A)(3). But attempt makes it a felony of the fourth degree. *See* R.C. 2923.02(E).

**{¶47}** Importuning under R.C. 2907.07(B)(1) provides that "[n]o person shall solicit another * * * to engage in sexual conduct with the offender, when the offender is eighteen years of age or older and four or more years older than the other person," when "the other person is thirteen years of age or older but less than sixteen years of age,

whether or not the offender knows the age of the other person." This is a fourth-degree felony, but the attempted version of this offense is a misdemeanor of the first degree. *See* R.C. 2907.07(B)(3) and 2923.02.

{¶48} Again, like the above analysis, the first two parts of the *Evans* test are easily met. The offenses of attempted unlawful sexual conduct with a minor and attempted importuning carry different penalties and there is "some element" of the greater offense that is not required to prove the lesser offense. Also like the above analysis, the third part of the test is not met. The greater offense of attempted unlawful sexual conduct with a minor can be committed without the lesser offense of attempted importuning also being committed. As we stated previously, one can easily imagine a scenario where attempting to engage in sexual conduct with a person between the ages of 13 and 16 years old can occur without attempting to solicit that person.

{¶49} Further, even if we could say that attempted importuning was a lesser included offense of attempted rape and attempted unlawful sexual conduct with a minor, we would still find that the trial court did not err by refusing to charge the jury with the lesser included offense instruction. The evidence at trial — namely that Marquand attempted to have sexual conduct with a 12-year-old girl and attempted to have sexual conduct with a 14-year-old girl — supports the charge of attempted rape and attempted unlawful sexual conduct with a minor under R.C. 2907.02(A)(1)(b) and 2907.07(A). *See State v. Thomas*, 40 Ohio St.3d 213, 216, 533 N.E.2d 286 (1988). Stated another way, the jury could not *reasonably* find Marquand not guilty of the charged offenses

(attempted rape and attempted unlawful sexual conduct with a minor). *See Evans,* 122 Ohio St.3d 381 at 13, 2009-Ohio-2974, 911 N.E.2d 889.

{¶50} Accordingly, Marquand's second assignment of error is overruled.

Other-Acts Evidence

{¶51} In his third assignment of error, Marquand argues that the trial court erred in admitting "extensive testimony by a forensic examiner regarding uncharged conduct that merely served to show [his] 'bad moral character.'" He specifically points to evidence that was admitted, over his objection, of what was found on his computer and iPhone, including titles of suspected child pornography movies, five photos of naked females suspected to be under the age of 18, and testimony regarding the "teen dating" site, "mylol.net," and Marquand's participation on the site. He maintains that this evidence was highly prejudicial and not submitted for a proper Evid.R. 404(B) purpose.

{¶52} The admission of other-acts evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that created material prejudice. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, citing *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565.

{¶53} Evid.R. 404(B) provides that

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or

during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

**{¶54}** In determining whether to permit other-acts evidence to be admitted, trial courts should conduct the three-step analysis set forth in *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278: (1) determine if the other-acts evidence "is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence" under Evid.R. 401; (2) determine if the other- acts evidence "is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other-acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B)"; and (3) consider "whether the probative value of the other-acts evidence is substantially outweighed by the danger of unfair prejudice." *Id.* at ¶ 20.

**{¶55}** Regarding the first two parts of the *Williams* test, the state argues that the other-acts evidence was relevant to proving Marquand's intent, as well as to establishing that he was not entrapped by law enforcement officials. We agree. The evidence of Marquand searching Google for online "dating sites for preteen" and "dating sites for 13 – 16 year olds," as well as the evidence regarding his participation on the "mylol.net" website, was relevant to establishing Marquand's interest in preteens and very young teenagers, which helps establish Marquand's intent to have sexual conduct with a 12-year-old (preteen) and a 14-year-old. This evidence further was relevant to establishing that Marquand was a very willing participant (and thus, he was not

entrapped) in the endeavor to have sexual conduct with — what he believed to be — 12- and 14-year-old girls.

{¶56} Similarly, the evidence relating to suspected child pornography was relevant as well. Marquand argued that there was no evidence that he intended to search for — or have sex with — anyone under the age of 18. He points to his Craigslist ad, where he only specified that he was looking for "young" women, and to the fact that he told police officers that he had only ever dated women over the age of 18 years old. But the other-acts evidence of suspected child pornography is relevant to proving that Marquand was interested in much younger children and relevant to establishing his willingness to travel to Ohio at a moment's notice to have sex with two young girls.

{¶57} Thus, in considering the first two parts of the *Williams* test, the other-acts evidence was relevant to making facts that were of consequence to the matter more probable than without the evidence. Further, the other-acts evidence was submitted for a proper Evid.R. 404(B) purpose — proving Marquand's motive and intent.

{¶58} We agree with Marquand that this other-acts evidence is highly inflammatory. But in considering the third part of the *Williams* test, where we must weigh the probative value of the other-acts evidence with the prejudicial effect of the evidence, we find that the probative value of the evidence "is substantially outweighed by the danger of unfair prejudice." *Id.* at ¶ 20.

{¶59} We further note that even if the other-acts evidence was improperly admitted, its admission would be harmless because it is our view that the outcome of the

trial would have been the same even if the evidence had not been admitted. This is because the state presented substantial other evidence of Marquand's guilt. Crim.R. 52(A); *see also State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 88.

**{¶60}** Marquand's third assignment of error is overruled.

**{¶61}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
MARY J. BOYLE, ADMINISTRATIVE   JUDGE

SEAN C. GALLAGHER, J., and
EILEEN T. GALLAGHER, J., CONCUR