[Cite as *State v. Burks*, 2018-Ohio-2515.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 105975

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**GLEN BURKS, II**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-609476-A

**BEFORE:** Celebrezze, J., Blackmon, P.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** June 28, 2018

**ATTORNEY FOR APPELLANT**

John Spellacy
John J. Spellacy & Associates
323 W. Lakeside Avenue, Suite 300
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:    Andrew F. Rogalski
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

{¶1} Defendant-appellant, Glen Burks (hereinafter "appellant") brings this appeal challenging his convictions for kidnapping, gross sexual imposition, and sexual imposition. Specifically, appellant argues that the trial court abused its discretion when it permitted the state to introduce "other acts" evidence under Evid.R. 404(B); that the evidence was insufficient to support his convictions; that the convictions were against the manifest weight of the evidence; and that the trial court committed plain error by failing to properly instruct the jury as to the kidnapping count. After a thorough review of the record and the law, this court affirms.

## I. Factual and Procedural History

{¶2} On September 14, 2016, appellant was indicted for three offenses against two victims. Count 1, gross sexual imposition, a fourth-degree felony in violation of R.C. 2907.05(A)(1); and Count 2, kidnapping, a first-degree felony in violation of R.C. 2905.01(A)(4), with a sexual motivation specification; involved a single victim, (hereinafter "M.W."). Count 3, gross sexual imposition, a fourth-degree felony in violation of R.C. 2907.05(A)(5), involved a second victim (hereinafter "C.W.").

{¶3} Counts 1 and 2 stem from an incident at appellant's home that occurred on April 29, 2016. M.W. was a technician who primarily installed and repaired internet services at customers' homes. On this particular date, M.W. traveled alone to appellant's house to perform repair services to appellant's internet router. As he arrived at appellant's home, M.W. was greeted at the front door by appellant. While greeting M.W., appellant said to him: "[m]y wife would have been here, but I let her run some errands because she didn't want to be here with a big black guy or a too smart white guy. You're the perfect one." (Tr. 485-486.) Appellant

then escorted M.W. downstairs into the basement of the home to a small office which included a desk and an internet router that M.W. was assigned to repair.

{¶4} M.W. testified that the office was small, 5 feet by 8 feet, and it contained a small desk and two chairs. Upon entering the room, M.W. "sat in the further chair to the wall away from the door * * * and [appellant] sat down right next to me." (Tr. 488-489.) M.W. further explained that "[appellant] reached over, * * * and [appellant] just screamed out of nowhere, "I ain't trying to kiss you, man." (Tr. 489.) M.W. detailed that appellant, with his right hand, leaned over and touched "a little bit of [M.W.'s] private area" and appellant's "thumb [was] just over [M.W.'s] belt and [appellant's] hand on the upper thigh [of M.W.] and [appellant's] fingers pointed in the direction of the area of [M.W.'s] private parts or crotch." (Tr. 492.) M.W. further testified that:

> [Appellant] sat back down. So at this point, I'm in alert mode. I'm scared of him honestly, so I get to moving over more to the left, but I couldn't move over any more. He kept moving closer to me. So again, I see him, I keep inching over. [Appellant] then reaches his left hand right here in my pants and I legit froze for about two seconds * * * I jumped up and [appellant] clenched my pants and [appellant] ripped [the pants] open.

(Tr. 489-490.)

{¶5} M.W. then attempted to leave the office, and appellant, who was a "big guy," about 6'2" and 270 pounds, stood up and blocked the door. (Tr. 490.) As he was trying to exit the basement office room, M.W. went on to detail that he had to physically squeeze past appellant, as appellant stood in the door blocking his exit. M.W. stated that he "had to rub against [appellant] and [appellant] jammed against [M.W.]." (Tr. 490-491.) M.W. made an attempt to beat appellant up the stairs to the first floor of the home, but appellant got in front of him, and appellant went up the stairway first.

{¶6} Appellant then "sprints from the hallway all the way to the front door and makes a football stance * * * and [appellant] said, 'please, man, give me five minutes.'" (Tr. 491.) M.W. further testified that appellant continued to "beg" and that appellant's begging "sounded like a little kid asking like a parent for some candy" and continued to beg for approximately "35 to 40 seconds." (Tr. 491.) Appellant then charged at M.W., and he avoided appellant and ran out the front door. M.W. then got into his service vehicle, drove off, and stopped approximately four streets away from appellant's house and called his manager to report that he had been "sexually assaulted in the private area." (Tr. 493.) M.W. then drove to the police station to file a police report.

{¶7} Count 3 stems from a incident that occurred at appellant's workplace. Appellant was working as an emergency medical technician and was employed by the city of Cleveland's Emergency Medical Services. During the first week of January 2014, C.W. was completing his field training duties and responsibilities as a new emergency medical technician and met appellant on his first day on the job. Upon first meeting appellant, appellant stated to C.W. "whatever you heard about me, don't believe it." (Tr. 588.)

{¶8} On his first day, C.W., his field training officer, and appellant responded to a 911 call of an elderly woman in need of medical attention. During the call, the men utilized a device known as a "lift chair" because the patient was discovered in a confined area. In removing the patient, C.W. and his field training officer handled the lift chair and appellant was to assist C.W. and support him if necessary. C.W. testified that he:

> [W]as at the bottom [of the lift chair] * * * [and appellant] was behind me. [Appellant] was supporting my back, making sure I didn't bump into anything or fall. In the process, I did feel [appellant's] hands start on my back and move to my buttocks.

(Tr. 592.)

{¶9}  After the call, appellant and C.W. spoke about the above incident.  C.W. asked appellant "[w]ere you getting a little comfortable at the call?"  Appellant then "laughed about it" and stated "what do you mean?"  C.W. testified that he also laughed and said "I felt your hand on my a[**]."  To which appellant replied "we just want to made cadets feel more comfortable" and "we like to joke around here."  (Tr. 596.)

{¶10}  Additionally, C.W. testified to other incidents that made C.W. feel "uncomfortable" around appellant.  One incident occurred while C.W. and appellant were at the station together lounging around enjoying downtime on a 24-hour shift.  At approximately 1:00 a.m., appellant suggested to C.W. that the two of them watch a movie that involved "two male best friends" and that "one friend did not know the other friend was gay" and the friend "went around having oral sex with other men."  Appellant then asked C.W. if he would pull his penis out and appellant would pull his penis out and "we can rub and tug."  (Tr. 602.)  C.W. testified that he took this as a suggestion that appellant wanted the two men to masturbate together.

{¶11}  During the pendency of the instant case, on March 15, 2017, the state filed a notice of intent to use other acts evidence pursuant to Evid.R. 404(B).  The state sought to introduce at trial testimony from a third victim (hereinafter "J.W.") who had made sexual assault claims against appellant eight  years ago.  The state argued that the testimony was to be offered in order to provide evidence probative of appellant's intent, motive, and purpose of sexual gratification.  In response, appellant's trial counsel filed a motion in limine seeking to exclude the introduction of the other acts evidence.

{¶12}  On May 15, 2017, the first day of trial, the trial court heard arguments from the parties concerning the state's motion for other acts evidence and appellant's motion in limine.

The trial court ultimately made a preliminary ruling allowing the other acts testimony and denying appellant's motion in limine.

{¶13} After a jury trial, the jury returned a not guilty verdict as to the gross sexual imposition offense charged in Count 1. However, the jury returned a guilty verdict on the lesser included offense of sexual imposition, a third-degree misdemeanor in violation of R.C. 2907.06. The jury returned a guilty verdict on Count 2, kidnapping, a first-degree felony; a verdict of not guilty as to the underlying sexual motivation specification; and a guilty verdict on Count 3, gross sexual imposition, a fourth-degree felony. Appellant was thereafter sentenced to prison for an aggregate sentence of four years. Appellant filed the instant appeal assigning the following errors for our review:

> I. The trial court abused its discretion and committed error when it admitted evidence of other crimes, wrongs and acts under Evid.R. 404(B).
>
> II. The trial court committed plain error and prejudiced the defendant by the manner it instructed the jury on evidence of other crimes, wrongs and acts under Evid.R. 404(B).
>
> III. The trial court committed plain error by failing to instruct the jury that kidnapping is a second degree felony if the victim was left in a safe place unharmed.
>
> IV. The evidence was insufficient to support the convictions in this case.
>
> V. The convictions in this case were against the manifest weight of the evidence.

## II. Law and Analysis

### A. Evid.R. 404(B) Other Acts Evidence

{¶14} In his first assignment of error, appellant argues the trial court committed prejudicial error by allowing J.W. to testify about a similar act occurring approximately eight years earlier, in violation of Evid.R. 404(B).

**{¶15}** The trial court has broad discretion in the admission and exclusion of evidence, including evidence of other acts under Evid.R. 404(B). *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 22. Unless the trial court has "clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere" with the exercise of such discretion. *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967).

**{¶16}** Evid.R. 404(B) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Such evidence may, however, be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). Similarly, R.C. 2945.59 permits the admission of other acts evidence tending to show a defendant's "motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question."

**{¶17}** In determining whether to admit other acts evidence, trial courts should conduct the three-step analysis set forth in *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice.

*Id.* at ¶ 20.

**{¶18}** In *Williams*, the defendant was charged with various crimes, including rape and gross sexual imposition, stemming from his alleged sexual abuse of a minor. At trial, the state offered evidence of the defendant's previous sexual abuse of another minor. The previous victim shared similar characteristics with the current victim in that both did not have active relationships with their fathers. The defendant used this lack of paternal relationship so that he could sexually exploit them. Based on these facts, the Ohio Supreme Court reinstated the trial court's order allowing the evidence because it showed "the plan of the accused" and that the defendant received "some type of sexual gratification," which the court stated was also relevant to show that the defendant's intent was sexual gratification. *Id.* at ¶ 22, 25, citing R.C. 2907.01 and 2907.05(A)(1). As a result, the evidence was admissible under R.C. 2945.59 and Evid.R. 404(B). *Id.* at ¶ 25.

**{¶19}** In the instant case, in the midst of trial and after hearing testimony from both M.W. and C.W., the trial court revisited the state's other acts motion and noted that:

> the evidence thus far provides more basis for [J.W.'s testimony] and it goes to an element of the [s]tate's case and would be a response to some of the cross-examination, some of the defense that's been raised in this matter with respect to whether or not there was some intent in [appellant's] mind at the time, specific questions especially to [C.W.'s] what he thought at the time was innocent, and then the argument is going to be made, and it has been made to this [c]ourt, that the intent wasn't at the time the acts occurred at.

(Tr. 638.) The trial court further noted that J.W.'s testimony was probative and not unfairly prejudicial and permitted J.W. to testify.

**{¶20}** J.W. testified that in 2008, he was a resident at a court ordered drug treatment center. On J.W.'s birthday, he was exercising and began to experience stomach pains and emergency medical services was called. Appellant and another paramedic responded to the treatment center and transported J.W. to the hospital. While in route to the hospital, appellant

was in the back of the ambulance, alone with J.W., while the other paramedic drove the ambulance. J.W. testified that appellant stated to him "man, you got big arms" and "its your birthday you can have it however you want it." As appellant was administering medical treatment for stomach pains as well as polyps and rectal bleeding, appellant took off his medical gloves and began to fondle J.W.'s penis "like [appellant] was trying to ejaculate [J.W.]" Appellant then apologized to J.W. for his conduct and stated to J.W. that he "felt bad." (Tr. 652.)

{¶21} With regard to the first and second steps of the *Williams* test, we find that J.W.'s testimony was relevant and was presented for a legitimate purpose under Evid.R. 404(B) and R.C. 2945.59. Similar to the factual scenario in *Williams*, appellant's interaction with M.W., C.W. and J.W. were alike in opportunity and method. J.W.'s testimony demonstrated appellant's motives and his intent, i.e., excusing the touching of C.W. as a prank or joke and excusing the touching of J.W.'s penis as administering medical treatment. In our view, if believed by the jury, such testimony could corroborate portions of M.W.'s and C.W.'s testimony, in particular, appellant's assertive sexual advances to M.W. and C.W. *See Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, at ¶ 22. Furthermore, J.W. corroborated M.W.'s and C.W.'s testimony about appellant's intent and motive and attacked defense counsel's arguments raised on cross-examination of M.W. and C.W. Thus, in considering the first two parts of the *Williams* test, the other acts evidence was relevant to making facts that were of consequence to the matter more probable than without the evidence and the other acts evidence was submitted for a proper Evid.R. 404(B) purpose — proving appellant's motive and intent. *State v. Marquand*, 8th Dist. Cuyahoga No. 99869, 2014-Ohio-698, ¶ 57.

**{¶22}** Finally, we consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. In our view, the challenged evidence is not unduly prejudicial because the trial court instructed the jury that J.W.'s testimony could not be considered to show that appellant had acted in conformity with a character trait during the encounters with M.W. and C.W. This instruction lessened the prejudicial effect of J.W.'s testimony. We note that there is a presumption "'that the jury has followed the instructions given to it by the trial court.'" *State v. Jones,* 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 194, quoting *State v. Murphy*, 65 Ohio St.3d 554, 584, 605 N.E.2d 884 (1992). Thus, Evid.R. 404(B) permitted admission of evidence of appellant's prior act because it helped to prove appellant's intent and motive, and absence of mistake. Accordingly, the prejudicial effect did not substantially outweigh the probative value of that evidence.

**{¶23}** Based on the foregoing, the trial court did not abuse its discretion by finding that the other acts evidence was probative and not unduly prejudicial. Accordingly, the trial court did not abuse its discretion by permitting J.W.'s testimony at trial.

**{¶24}** Appellant's first assignment of error is overruled.

### B. Limiting Instructions Regarding 404(B) Other Acts Evidence

**{¶25}** In his second assignment of error, appellant argues that the trial court committed plain error and prejudiced appellant in the manner in which it instructed the jury regarding Evid.R. 404(B) other acts evidence. Appellant argues that the limiting instructions given to the jury prior to J.W.'s testimony and the written and verbal instructions provided to the jury at the close of trial prejudiced appellant.

**{¶26}** We note that appellant's trial counsel did not object to these limiting instructions prior to the testimony of J.W. Therefore, appellant has forfeited all but plain error. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 23; Crim.R. 52(B). "A forfeited error is not reversible error unless it affected the outcome of the proceedings and reversal is necessary to correct a manifest miscarriage of justice." *State v. Amison*, 8th Dist. Cuyahoga No. 104728, 2017-Ohio-2856, ¶ 4, citing *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3. Under Crim.R. 52(B), "[p]lain error does not exist unless, but for the error, the outcome at trial would have been different." *State v. Joseph*, 73 Ohio St.3d 450, 455, 653 N.E.2d 285 (1995), citing *State v. Moreland,* 50 Ohio St.3d 58, 552 N.E.2d 894 (1990). We also note that notice of plain error "'is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice.'" *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002), quoting *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978).

**{¶27}** In the instant case, appellant specifically argues that the trial court abused its discretion when it read a limiting instruction regarding Evid.R. 404(B) that included the entirety of the language of the rule. After hearing testimony from both M.W. and C.W., the trial court then stated the following limiting instruction to the jury prior to J.W.'s testimony:

> I have some instructions for you with respect to the testimony you're about to hear. Evidence will be received in this matter now from this witness about the alleged commission of other acts other that the offense in which this defendant is charged in this trial. This evidence is being received for a limited purpose. It's not being received, and you may not consider it, to prove the character of the defendant in order to show that he acted in conformity or accordance with that character. If you find that the evidence of these other acts is true, that the defendant committed them, you may consider that evidence only for the purpose of deciding whether it proves an absence of mistake or accident, the defendant's motive, opportunity, intent or purpose, preparation or plan to commit the offense

charged in this trial, or knowledge of circumstances surrounding the offense charged in this trial.

(Tr. 641-642.)

**{¶28}** Appellant argues that the trial court should have specifically tailored its instructions prior to receiving J.W.'s testimony and should have omitted irrelevant portions of the above recitation of Evid.R. 404(B). For example, appellant argues that because "identity" was not a disputed issue at trial, the trial court should not have read the "identity" portion in the limiting instructions. Appellant's argument continues that the trial court should have tailored the limiting instructions to issues only specifically relevant to the case. Appellant fails to cite to any case law or statutory authority in support of this argument as required by App.R. 16(A)(7). *See State v. Smith*, 2d Dist. Montgomery No. 20828, 2006-Ohio-45, ¶ 40 (where in a sexual imposition trial, a trial court's failure to give limiting instructions to the jury as to other acts testimony was plain error). Nevertheless, after reviewing the trial court transcripts, we find that the trial court's reading of the entirety of the language of Evid.R. 404(B) did not rise to the level of a manifest injustice. Accordingly, we find no plain error with the limiting instructions as they were stated to the jury.

**{¶29}** Appellant also argues that he was prejudiced by the jury instructions because the trial court did not omit the irrelevant portions of Evid.R. 404(B). Again, as above, appellant cites to no case law or authority on this argument. Appellant simply states that because the jury instructions included the entirety of the rule, he was prejudiced because the "jury was given free rein to employ every codified facet of other acts evidence." Appellant's brief at 24.

**{¶30}** In our review of the record, we note that the trial court included a verbatim recitation of the Ohio Jury Instructions as it pertains to 404(B). The trial court stated that:

Evidence was received about the commission of other acts than the offenses with which the defendant is charged in this trial. That evidence was received only for a limited purpose. It was not received and you may not consider it to prove the character of the defendant in order to show that he acted in conformity or accordance with that character. If you find that the evidence of other acts is true and that the defendant committed them, you may consider that evidence only for the purpose of deciding whether it proves: (a) the absence of mistake or accident; or (b) the defendant's motive, opportunity, intent; or (c) purpose, preparation, or plan to commit the offense charges in this trial; or knowledge of circumstances surrounding the offense charged in this trial; or (d) the identity of the person who committed the offense in this trial.

(Tr. 792-793.) Appellant argues that because the entirety of the 404(B) instruction was provided in the jury instructions, that the jury was confused and the appellant was prejudiced by this confusion. We find this argument to be unpersuasive. In our review of the record, we note that the trial court gave limiting instructions prior to J.W.'s testimony that this evidence was not being offered to prove appellant's character and provided these same instructions to the jury at the close of the case during the trial court's charge to the jury. Under these circumstances, we must presume the jury followed those instructions. *See State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995); *Pang v. Minch*, 53 Ohio St.3d 186, 195, 559 N.E.2d 1313 (1990).

**{¶31}** In our review of the record, we find that the trial court did not commit plain error by providing the entirety of the 404(B) language within the limiting instructions prior to J.W.'s testimony and within the jury instructions. Appellant's argument here is without merit and his second assignment of error is overruled.

### C. Safe Place Unharmed Jury Instructions

**{¶32}** In his third assignment of error, appellant argues that the trial court committed plain error in failing to instruct the jury that kidnapping, charged in Count 2, is a second-degree felony, rather than a first degree-felony if the jury found that the victim was left in a safe place unharmed.

**{¶33}** In our review of the record, we note that after the parties had rested, the trial judge invited both parties to request a "safe place unharmed" instruction as to the kidnapping count. Both the state and appellant's trial counsel agreed that such an instruction would not be proper given the testimony. It follows that as appellant's trial counsel did not object to this omission, appellant has forfeited all but plain error. *Payne,* 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, at ¶ 23; Crim.R. 52(B).

**{¶34}** In support of his argument, appellant directs our attention to *State v. Carroll*, 8th Dist. Cuyahoga No. 93938, 2010-Ohio-6013. In *Carroll*, this court noted that kidnapping is ordinarily a felony of the first degree. R.C. 2905.01(C)(1). If, however, the offender leaves the victim in a safe place unharmed, kidnapping will be a second-degree felony. *Carroll* at ¶ 13, citing *State v. Banks*, 8th Dist. Cuyahoga No. 91992, 2009-Ohio-4229. In *Carroll*, the defendant was convicted of robbery and kidnapping for the theft of money from several retail stores. This court agreed with defendant's argument on appeal that the evidence showed that the defendant had left the victim in a safe place unharmed. This court sustained defendant's assignment of error and stated that:

> [t]he evidence presented unequivocally showed that [defendant] left the victims in safe places unharmed, and thus his kidnapping convictions could only be felonies of the second degree. The trial court committed plain error in failing to instruct the jury in this regard. The absence of a proper jury instruction should have been cured by sentencing appellant on the kidnapping charge as a second-degree felony.

*Id*. at ¶ 16.

**{¶35}** In the instant case, we find appellant's arguments unpersuasive and find the testimony presented at trial to be distinguishable from the facts of *Carroll*. In *Carroll*, the defendant robbed and attempted to rob several retail stores all within the same day. The

defendant insinuated during the robberies that he had a gun in his pocket by keeping one hand in his pocket while demanding money from the cash register clerks. During one robbery, the defendant even stated to a cash register clerk that he possessed a gun. However, during all of the robberies, the defendant fled the store, leaving the victims safe and unharmed.

{¶36} With regards to the crimes involving M.W., testimony presented at trial is in stark contrast to the testimony presented in *Carroll.* It was the victim, M.W., that fled the area, not once but on two occasions. M.W. first fled the basement office area and next fled the house, leaving out of the front door after appellant charged at him. M.W. further testified that he drove off in his service vehicle with such haste that he left traffic cones on the street. M.W. then drove approximately four blocks away before calling his supervisor, presumably to ensure that he was a safe distance from appellant's home. These facts contradict the argument that the victim, M.W., was left in a safe place unharmed.

{¶37} Based on the foregoing analysis, we find appellant's arguments are without merit. The testimony at trial is factually distinguishable from *Carroll,* 8th Dist. Cuyahoga No. 93938, 2010-Ohio-6013, and a jury instruction regarding the "safe place unharmed" subsection of the kidnapping statute was not applicable to the testimony presented at trial. Accordingly, appellant's third assignment of error is overruled.

### D. Sufficiency and Manifest Weight of the Evidence

{¶38} In his fourth and fifth assignments of error, appellant argues that the evidence was insufficient to support his convictions and that his convictions were against the manifest weight of the evidence. Although the terms "sufficiency" and "weight" of the evidence are "quantitatively and qualitatively different," we address these issues collectively because they are

closely related, while applying the distinct standards of review to appellant's arguments. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶39} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶40} In contrast to sufficiency, "weight of the evidence involves the inclination of the greater amount of credible evidence." *Thompkins* at 387. While "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine whether, "'in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

### 1. M.W., Count 1, Sexual Imposition

{¶41} With regards to Count 1, appellant was convicted of sexual imposition, a third-degree misdemeanor in violation of R.C. 2907.06(A)(1), the lesser included of gross sexual imposition, which states:

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(1) The offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard.

Sexual contact is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶42} After careful review of the record, we find that appellant's sexual imposition conviction with regards to Count 1 was supported by sufficient evidence. M.W. testified that while he was seated at the desk in the basement office, appellant reached over and placed his hand on M.W.'s "upper thigh area." Moreover, M.W.'s testimony demonstrates that he found the contact to be offensive as he testified that he said to appellant "what are you doing? I don't get down like that." (Tr. 510.) Viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found the essential elements of sexual imposition were proven beyond a reasonable doubt.

{¶43} Moreover, we are unable to conclude that appellant's sexual imposition conviction was against the manifest weight of the evidence. The jury, as the trier of fact was in the best position to weigh the credibility of the witnesses and was free to believe all or part of M.W.'s testimony regarding appellant's conduct. Seemingly, because the jury returned a not guilty verdict on the gross sexual imposition offense charged in the indictment, the jury did not believe some of his testimony. We note that gross sexual imposition, in violation of R.C. 2907.05(A)(1) carries with it the additional element of "purposely compels the other person to submit by force or threat of force." The jury made the determination that when appellant

touched M.W.'s "upper thigh," such conduct did not amount to "purposely compelling" M.W. "to submit by force." However, we cannot say that the jury clearly lost its way when it found the same conduct to constitute sexual imposition. Accordingly, we cannot say that the jury clearly lost its way in finding appellant guilty of sexual imposition on Count 1.

### 2. M.W., Count 2, Kidnapping, with Sexual Motivation Specification

{¶44} With regards to Count 2, appellant was convicted of kidnapping, a first-degree felony in violation of R.C. 2905.01(A)(4), which states:

> (A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
>
> (4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will.

{¶45} After careful review of the record, we find that appellant's kidnapping conviction was supported by sufficient evidence.

{¶46} In our review of the record, we note that M.W. stated that appellant, who was a "big guy," blocked the doorway of a basement office that was small in size, roughly 5 feet by 7 feet. Further, we note that appellant took a "football stance" at the front doorway in an effort to not allow M.W. to leave appellant's house. In addition, M.W. testified that appellant stated to him that appellant said "please, just five minutes." Appellant then rushed at M.W when he did not comply with appellant's request.

{¶47} Viewing this evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found the essential elements of kidnapping were proven beyond a reasonable doubt. We note that the Ohio Jury Instructions define "restrain the liberty" as "to limit or restrain one's freedom of movement" and the "restraint need not be for any

specific duration of time or in any specific manner." O.J.I. 505.01(A)(9). *See State v. Studgions,* 8th Dist. Cuyahoga No. 94153, 2010-Ohio-5480. *See also State v. Sanders*, 8th Dist. Cuyahoga No. 75398, 2000 Ohio App. LEXIS 1651 (Apr. 13, 2000). In considering appellant's conduct, standing in the basement doorway and in taking a "football stance" in the front doorway and charging at M.W., we conclude that a rational trier of fact could have found that such conduct constituted restraining M.W.'s liberty.

{¶48} Based on the foregoing analysis, we are likewise unable to conclude that appellant's kidnapping conviction was against the manifest weight of the evidence. The jury, as the trier of fact was in the best position to weigh the credibility of the witnesses and was free to believe all or part of M.W.'s testimony regarding appellant's conduct. Accordingly, we cannot say that the jury clearly lost its way in finding appellant guilty of kidnapping.

### 3. C.W., Count 3, Gross Sexual Imposition

{¶49} With regards to C.W., as to Count 3, appellant was convicted of gross sexual imposition in violation of R.C. 2907.05(A)(5), which states:

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(5) The ability of the other person to resist or consent or the ability of one of the other persons to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person or of one of the other persons is substantially impaired because of a mental or physical condition or because of advanced age.

{¶50} After careful review of the record, we find that appellant's gross sexual imposition conviction was supported by sufficient evidence. C.W. testified that appellant was

behind him, providing him support, and appellant had his hand on C.W.'s back.   Appellant then

touched C.W.'s buttocks.   As C.W. testified:

> [Appellant] had his hand approximately halfway on my spine when we were
> backing out as I was coming backwards out of the bathroom.   I felt [appellant's]
> hand getting lower to the point where [appellant's hand was on my] lower back
> and then I felt [appellant] move his hand and grip my buttocks.

(Tr. 593.)

{¶51} In our view, C.W.'s descriptions of appellant's touching constituted sufficient

evidence from which a jury could find that appellant committed these acts for his own sexual

gratification.   We note that C.W.'s description of the touching coupled with the additional

testimony of appellant's unusual behavior and subsequent assertive sexual advances further

explains appellant committed the act for his own sexual gratification thus demonstrating that the

touch constituted "sexual contact" pursuant to R.C. 2907.01(B).

{¶52}   With respect to the element of the victim's inability to resist because of a current

physical condition, C.W. testified that he was performing a work responsibility, that his back was

to appellant, and that he had his full attention on the task at hand.   We note that C.W.'s physical

condition at the time of the touching made it virtually impossible for him to resist because he was

assisting in moving a patient in a lift chair.   Thus, C.W.'s ability to resist or consent was

substantially impaired because of his actual physical condition.   Appellant undoubtedly knew

that his ability to resist or consent was substantially impaired because of a physical condition

because appellant was directly behind C.W. providing him support and even assisting in the task

at hand.

{¶53}   Viewing the evidence in a light most favorable to the prosecution, we conclude

that a rational trier of fact could have found the essential elements of gross sexual imposition

were proven beyond a reasonable doubt.

{¶54} Moreover, we are unable to conclude that appellant's gross sexual imposition conviction was against the manifest weight of the evidence. The jury, as the trier of fact was in the best position to weigh the credibility of the witnesses and was free to believe all or part of C.W.'s testimony regarding appellant's conduct. Accordingly, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice in finding appellant guilty of gross sexual imposition.

{¶55} For all the foregoing reasons, appellant's fourth and fifth assignments of error are overruled.

### III. Conclusion

{¶56} In sum, the trial court did not abuse its discretion by permitting the state to introduce J.W.'s testimony. The trial court did not commit plain error by providing the entirety of the language of Evid.R. 404(B) within the limiting instructions prior to J.W.'s testimony and within the jury instructions. Further, it was proper to not instruct the jury as to the "safe place unharmed" portion of the kidnapping statute as the testimony did not support such an instruction. Lastly, the state presented sufficient evidence to support appellant's sexual imposition, kidnapping, and gross sexual imposition convictions and those convictions were not against the manifest weight of the evidence.

{¶57} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

PATRICIA ANN BLACKMON, P.J., and
ANITA LASTER MAYS, J., CONCUR